WINSTON (BANK OF UNITED STATES v.). See Case No. 944.

WINSTON (CAPE GIRARDEAU & S. L. R. R. v.). See Case No. 2,390.

WINSTON (KINZIE v.). See Case No. 7,835.

WINTER, In re. See Case No. 1,057.

WINTER (GRAVES v.). See Case No. 5,710.

## Case No. 17,889.

### WINTER v. The HERCULES.

[Holmes, 465.] [1]

Circuit Court, D. Massachusetts. March, 1875.

#### COLLISION—CHANGE OF COURSE.

Mere apprehension of danger, not then imminent, is not sufficient to justify a change of course by a sailing-vessel meeting a steamer under way.

[Appeal from the district court of the United States for the district of Massachusetts.]

[This was a libel for damages resulting from a collision by Joseph Winter against the steamer Hercules (Charles H. Winnett, claimant).]

J. C. Dodge, for claimant.
F. Goodwin, for libellant.

SHEPLEY, Circuit Judge. Both parties have appealed from the decree of the district court, which awarded to the libellant one-half of his damages suffered in a collision between the steamer Hercules and the Antelope, a schooner of libellant. The collision occurred near Martha's Vineyard, three or four miles north of west from the Cross Rip light-ship. The wind was blowing heavily about east-south-east, accompanied by rain. The steamer was working to the eastward about three or four miles an hour through the water. The schooner was sailing westward before the wind eight or ten miles an

hour through the water. Before either vessel changed her course in view of the pending collision, they were heading in nearly opposite directions; the schooner west by north, the steamer east-south-east one quarter east. The steamer struck the schooner about midships on her starboard side and nearly square across her. The steamer first starboarded; then the schooner, instead of keeping her course, starboarded; then the steamer changed and ported her helm. Then followed the collision. The schooner had the right of way, and was bound to keep her course. The steamer might go either side of the schooner, to starboard or port, as might be most safe. Without going into detail of the testimony, I am satisfied, upon a careful examination of the record, that if, when the steamer starboarded, she had adhered to that course without change, and the schooner had also kept her course, there would have been no collision. When the steamer starboarded, the schooner, apparently for the purpose of widening the distance between the two, also starboarded. But the steamer then changed and ported. This brought the schooner directly across the bow of the steamer. The schooner attempts to justify her change of course on the theory that it was not made until the collision was inevitable. I do not so find from the testimony. If the schooner had kept her course the probabilities are that the collision would not have taken place; that is, the correction of the mistake on the part of the steamer would not have been too late to avoid the collision if the course of the schooner had not been changed. Mere apprehension of danger does not exonerate the schooner for changing, unless the danger was imminent. It is contended on the part of the steamer that the first change of helm was corrected before it had occasioned any change in the course of the vessel. I have reached the conclusion from the testimony that the course of the steamer was changed, and that, if the order to port had been given at the time the first order to starboard was given, it would not have been too late to have avoided the collision. It is difficult to sift the truth from conflicting testimony on questions of time and distance. There are almost certain tests by which all other evidence in collision cases can ordinarily be tried in the undisputed facts of the case. Time and distance are the vital questions in this case. But looking to the facts as proved, I have reached the conclusion, not without some hesitation, that the steamer ported too late, and not until she was too near the schooner. The doubt in the district court was as to the fault of the schooner. The additional evidence before this court tends strongly to sustain the correctness of the conclusion of the district judge, holding her also in fault.

Decree affirmed, with interest and without costs after the appeal.

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]